# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

JOHN RAINES AND JOHN NESSE, *as Trustees of the Carpenters & Joiners Welfare Fund et al.*; and

JEFF MILLER AND RICK BATTIS, *as Trustees of the Twin City Flooring Covering Industry Pension Fund et al.*,

Plaintiffs,

v.

STEVE JUNGE INSTALLATIONS, LLC and MINDY JUNGE,

Defendants/Third-Party Plaintiffs,

v.

NORTH CENTRAL STATES REGIONAL COUNCIL OF CARPENTERS,

Third-Party Defendant.

No. 20-1291 (JRT/TNL)

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO STRIKE THIRD-PARTY COMPLAINT**

---

Amanda R. Cefalu and Nathan T. Boone, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for plaintiffs.

Bryan J. Morben and Sandra S. Smalley-Fleming, **FREDRIKSON & BYRON**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for defendants Steve Junge Installations, LLC and Mindy Junge.

Amanda R. Cefalu, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402 and Burt A. Johnson, **NORTH CENTRAL STATES REGIONAL COUNCIL OF CARPENTERS**, 700 Olive Street, St. Paul, MN 55130, for third-party defendant North Central States Regional Council of Carpenters.

Plaintiffs, trustees of several union pension and fringe benefit funds ("the Funds") filed a Motion to Strike Defendants' Third-Party Complaint, asserting that third-party practice is improper in this ERISA Section 515 delinquent contribution action because it would undermine the purpose of Section 515, which is to prevent complex litigation. Defendants and Third-Party Plaintiffs, Junge's Flooring and Mindy Junge, allege that Third-Party Defendant, North Central States Regional Council of Carpenters (the "Union"), procured their agreement to a collective bargaining agreement ("CBA") through fraud in the execution and otherwise breached the CBA, so the Union is derivatively liable for any contributions to the Funds owed by Defendants.

Because Defendants' Third-Party Complaint states a theory of derivative liability; the factual and legal allegations in the Third-Party Complaint overlap with Defendants' affirmative defenses to the collection action; and, given that overlap, proceeding with the claims together would be more efficient than additional litigation, subsequent or parallel to the collection action, the Court will find that impleader is proper and will exercise its discretion to deny the Funds' Motion to Strike the Third-Party Complaint.

## BACKGROUND

### I.   THE PARTIES

Plaintiffs (collectively, "the Funds") are trustees of multiemployer fringe benefit funds created and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5), and administered in accordance with the

Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*. ("ERISA").  (*See* Compl. ¶¶ 1–5, June 1, 2020, Docket No. 1.)[1]

Defendant and Third-Party Plaintiff Steve Junge Installations, LLC d/b/a Junge's Flooring ("Junge's Flooring"), is a Minnesota limited liability company in the floorcovering business.  (*Id.* ¶ 6–7).  Defendant and Third-Party Plaintiff Mindy Junge is an owner or officer of Junge's Flooring (Junge's Flooring and Mindy Junge are referred to collectively throughout as "Defendants").  (*Id.* ¶ 8.)  Junge's Flooring employs individuals in the carpentry construction and floorcovering industries and is an "employer" under ERISA Section 5, 29 U.S.C. § 1002(5).  (*Id.* ¶¶ 9–10.).

Third-Party Defendant North Central States Regional Council of Carpenters (the "Union") is a labor organization based in Saint Paul, Minnesota.  (Third-Party Compl. ¶ 6, Sept. 15, 2020, Docket No. 18.)  The Union represents employees in collective bargaining with employers and contractors in fields such as carpentry, industrial, millwright, and pile driving.  (*Id.*)

---

[1] Plaintiffs John Raines and John Nesse are Trustees of the Carpenters & Joiners Welfare Fund, (Compl. ¶ 1), as well as Trustees of the Twin City Carpenters Pension Master Trust Fund, (*id.* ¶ 2.) Plaintiffs Jeff Miller and Rick Battis are Trustees of the Twin City Floor Covering Industry Pension Fund.  (*Id.* ¶ 3).  Plaintiffs John Raines and Rick Battis are Trustees of the Twin City Floor Covering Industry Fringe Benefit Trust.  (*Id.* ¶ 4.)  Plaintiffs are authorized under ERISA to act on behalf of these fringe benefits plans.  (*Id.* ¶ 5.)

## II.    THE FUNDS' COLLECTION ACTION AGAINST DEFENDANTS

Junge's Flooring signed a collective bargaining agreement ("CBA") with the Union through at least April 30, 2019, which required Defendants to pay fringe benefit contributions to the Funds for every hour worked by employees who performed floorcovering work as defined by the CBA.  (Compl. ¶¶ 14, 16)  Mindy Junge agreed to be personally bound and liable for any failure of Junge's Flooring to comply with the CBA. (*Id.* ¶ 15.)  In addition to making benefit contributions, Defendants were bound to the terms of the Trust Agreements, which govern the Funds, (*id.* ¶ 18), required to complete monthly reports identifying covered employees and their hours worked, (*id.* ¶ 17), and obligated to make their employment and payroll records available for examination and audits by the Funds, (*id.* ¶ 19.)

On June 1, 2020, the Funds filed a Complaint against Defendants, claiming a right to audit Junge's Flooring for compliance with the CBA from February 2018 through April 2019, and a right to any contributions owed based on the audit.  (*Id.* ¶¶ 21–29.) Defendants allegedly failed to fill out the required monthly report form, (*id.* ¶¶ 17, 25), and refused to produce employment and payroll records for February 2018 through April 2019 as requested, (*id.* ¶¶ 22–25.)  The Funds claim that Defendants did not make required fringe benefit contributions between February 2018 and April 2019.  (*Id.* ¶ 26.) On September 15, 2020, Defendants filed an Answer and Affirmative Defenses.  (Ans. & Affirm. Defenses, Sept. 15, 2020, Docket No. 18.)  Defendants affirmatively stated that

they are not liable for contributions because, among other things, the CBA was procured through fraud in the execution and/or fraud in the inducement and is therefore void and unenforceable.  (Affirm. Defenses ¶ 4).

## III.    THE THIRD-PARTY COMPLAINT

Defendants/Third-Party Plaintiffs ("Defendants") allege that Dominic Andrist, an agent and representative of Third-Party Defendant ("the Union"), met with Steve and Mindy Junge, the owners of Junge's Flooring, multiple times in November 2017 to encourage Junge's Flooring to have its employees join the Union.  (Third-Party Compl. ¶¶ 8–9.)  At each meeting, Steve Junge told Andrist that he was not interested in signing a CBA because Junge's Flooring primarily does residential work with lower profit margins, and therefore could not afford to pay union wages and benefits for all employees.  (*Id.* ¶ 9.)  However, Andrist represented that Junge's Flooring could sign a CBA and the Union would only require payment of Union wage rates and benefits for employees working on jobs with Union general contractors.  (*Id.* ¶ 10.)  At various meetings, Andrist assured Junge's Flooring that it could continue working on non-Union jobs without paying Union wages or benefits, (*id.* ¶¶ 10–11), would get significant work from Union general contractors, (*id.* at ¶ 12), and could terminate the CBA at any time, (*id.* at ¶¶ 13, 15–16.)

Then, Andrist went to the Junge's Flooring office in March 2018 while Steve was out at a worksite.  (*Id.* ¶ 17.)  Even though Steve had been primarily involved in discussions with the Union, Andrist handed Mindy a document titled "Agreement and Signature

Pages" and asked her to sign it. (*Id.*)  According to Defendants, Andrist told Mindy that she did not need to read the document because some contents would be modified based upon his discussions with Steve. (*Id.* ¶ 18.)  Andrist instructed Mindy to backdate the signature, insisted that they needed to get it signed, would work out details later, and hovered over her until she signed, giving her no time to review the document or discuss with an attorney. (*Id.* ¶¶ 17–21.)  Andrist again assured Mindy that the CBA could be terminated at any time and would only impose an obligation for Union jobs. (*Id.* ¶ 20.) Mindy signed the document, allegedly under pressure and relying on Andrist's verbal representations. (*Id.* ¶ 21.)

On April 9, 2018, after receiving very few jobs from Union general contractors and having difficulties getting in touch with Andrist, the Junges informed Andrist that the agreement was not working out. (*Id.* ¶¶ 22–27.)  Andrist did not respond, and the Junges considered the agreement terminated. (*Id.* ¶ 27.)

In May 2018, Junge's Flooring started receiving monthly remittance reports to fill out, even though the company had not worked on any Union jobs. (*Id.* ¶ 28.)  Andrist instructed Steve to fill out the reports indicating Junge's Flooring had no Union employees. (*Id.*)

In September 2018, Junge's Flooring received a letter from the Funds' receiving agent, asking to set up an audit to verify the accuracy of contributions made to the Funds. (*Id.* ¶ 29.)  Steve responded that Junge's Flooring had terminated the CBA, and Steve was

allegedly told the audit was not necessary. (*Id.* at ¶ 30.) In November 2018, Junge's Flooring received a letter from the Carpenters and Joiners Fringe Benefits Fund threatening legal action if it did not comply with the audit. (*Id.* ¶ 31.)

In December 2018, Andrist told Defendants to send an email confirming termination of the CBA, and Mindy sent the email on December 18, 2018. (*Id.* ¶¶ 33–35.) In February 2019, after another request from Andrist, the Junges sent the termination confirmation request again, this time on Junge's Flooring letterhead. (*Id.* ¶¶ 36–37.) Junge's Flooring continued to only work on non-Union jobs and did not have any communication with the Union or the Funds. (*Id.* ¶¶ 38–39.)

On September 15, 2020, Defendants filed a Third-Party Complaint against the Union seeking a declaratory judgment that the CBA is void *ab initio* or voidable based on the Union's misrepresentations, (*id.* ¶ 42–55), and bringing one count for breach of contract for the Union's breach of the "actual agreement"—the terms negotiated by Andrist and Steve Junge, (*id.* ¶¶ 56–62.)

On September 30, 2020, the Funds filed a Motion to Strike or Dismiss the Third-Party Complaint pursuant to Federal Rule of Civil Procedure 14(a)(4). (Mot. Strike Pleading, September 30, 2020, Docket No. 21.)[2]

_____

[2] Because the Funds' Motion was styled as a "Motion to Strike or Dismiss," and because the Motion was not referred to the Magistrate Judge, there is some confusion among the parties about whether they must make 12(b)(6) arguments about the viability of Defendants' third-party claims. To that end, in addition to their arguments regarding improper third-party practice, the Funds argue that the Defendants' claims against the Union are either preempted by Section 8 of

**DISCUSSION**

I.    **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 14, a defendant may bring a third-party complaint against a nonparty "who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  By bringing a third-party complaint, the defendant becomes the third-party plaintiff, and the third-party becomes the third-party defendant. Fed. R. Civ. P. 14(a).  Generally, impleader under Rule 14(a) "should be liberally construed in favor of impleading a third-party, as its purpose is to avoid a circuity of actions and a multiplicity of suits, in order that all related claims may be disposed of in one action, and thereby simplify, and expedite, the litigation process."  *United States v. J & D Enterprises of Duluth*, 955 F. Supp. 1153, 1156 (D. Minn. 1997) (citations omitted).  "[T]hird-party practice under Rule 14 enables a party to avoid the costs and pitfalls associated with litigating multiple suits on the same subject matter, and the attendant possibility of inconsistent verdicts[.]"  *Heubel Materials Handling Co. v. Universal Underwriters Ins. Co.*, 704 F.3d 558, 565 (8th Cir. 2013) (quotation omitted).

─────────────────

the National Labor Relations Act ("NLRA") because they are claims for unfair labor practices, or are improper under Section 301 of the Labor Management Relations Act ("LMRA") because the statute of limitations expired, or Defendants failed to exhaust grievance remedies.  Because the Motion before the Court is not a Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) and, in fact, such a motion could only be filed by the Third-Party Defendant, the Court declines to analyze the merits of the NLRA and LMRA arguments at this time.

However, any party may move to strike, sever, or try separately the third-party complaint.  Fed. R. Civ. P. 14(a)(4).  Whether to permit impleader is within the discretion of the court, *see Waylander-Peterson Co. v. Great Northern Ry. Co.*, 201 F.2d 408, 415 (8th Cir. 1953), and a court does not abuse its discretion in striking a third party complaint if permitting third-party practice would disadvantage the underlying action, *see, e.g.*, *Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986) (citing 6 Wright & Miller, *Fed. Prac. & Proc.* § 1443, at 210 (1971)).

## II.   ANALYSIS

### A.   Derivative Liability

To maintain their Third-Party Complaint under Rule 14(a), Defendants must articulate a theory of the Union's alleged derivative or secondary liability for the Funds' claims against them.  A third-party defendant's alleged liability must be "in some way dependent upon the outcome of the main claim."  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (quoting *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987)).  A third-party plaintiff cannot merely assert a "separate and independent claim," even if the third-party complaint arises out of the same set of facts as the original claim. *Id.*  To satisfy Rule 14(a), third-party plaintiffs often assert causes of action for indemnity or contribution, but impleader doctrine is not limited to those types of claims.  *See Wells*

*Fargo Bank, N.A. v. MLD Mortg., Inc.*, No. 12–227, 2012 WL 6139366, at *2 (D. Minn. Dec. 11, 2012).[3]

In their Third-Party Complaint, Defendants allege that they have been sued by the Funds seeking unpaid fringe benefit contributions and other damages because of the Union's fraud and breach of the CBA.  Defendants ask the Court to order the Union to indemnify Defendants for any damages caused by the Union's conduct.  In other words, if the Funds are entitled to fringe benefit contributions from Junge's Flooring, the Union is in turn liable to Junge's Flooring for those amounts because it was through the Union's fraudulent actions that Junge's Flooring was made liable to the Funds.  Defendants also suggest that any liability to the Funds would amount to additional damages for the Union's alleged breach of contract since, under contract law, a breaching party is liable for all losses that "naturally and proximately flow from the breach."  *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 630 (Minn. 2012) (quoting *Olson v. Rugloski*, 277 N.W.2d 385, 388 (Minn. 1979)).

The Third-Party Complaint explains why the Union is secondarily liable for any damages Defendants may owe the Funds in the underlying Section 515 action.  Therefore,

---

[3] *See also* 6 Wright & Miller, *Fed. Prac. & Proc.* § 1446 (3d ed.) ("A third-party claim may be asserted under Rule 14(a)(1) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defending party.  The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.").

Defendants have stated a theory of derivative liability sufficient for impleader. The Funds argue that Defendants' third-party claims are not dependent on the outcome of the original Section 515 action. Rather, the Funds contend, Defendants assert independent claims based on the Union's breach of contract for fraud and misrepresentation, and Defendant's liability to the Funds would merely be evidence of damages sustained due to the Union's alleged wrongdoing. The Court finds, however, that because Defendants allege the Union is liable to them for fraud or breach of contract, and that the extent of damages owed by the Union to Defendants depends on Defendants' liability to the Funds, Defendants have sufficiently pleaded derivative liability for impleader pursuant to Rule 14(a).

### B. Heightened Impleader Standard Under ERISA Section 515

Although the Court finds that Defendants stated a sufficient theory of derivative liability pursuant to Rule 14(a), the Court must also determine whether, as the Funds argue, third-party practice in this case is nonetheless subject to a heightened standard to protect the purpose of ERISA Section 515, 29 U.S.C. § 1145. Prior to enactment of Section 515, collection actions often turned into "complex and costly litigation involving various contract formation defenses." *Cent. States, S.E. & S.W. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1348 (8th Cir. 1990). Congress passed Section 515 to "simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration of multiemployer pension plans."

*Id.*  Section 515 now places the pension fund in a better position than a typical third party beneficiary to a contract, as a pension fund is entitled to assume that the parties to the CBA are following the stated plain terms therein.  *Id.* at 1348–49.  To that end, "courts recognize only two defenses to a collection action: that the pension contributions are themselves illegal or that the collective bargaining agreement is void."  *Id.* at 1349.

The Funds argue that a distinct, heightened impleader standard applies for collection actions pursuant to ERISA Section 515 which limits the scope of a third-party complaint in the same way Section 515 limits defenses to collection actions.  In other words, a third-party complaint is only viable if it alleges that the operative agreement is either illegal or void.  Most courts, however, ultimately rely on generally applicable discretionary considerations for third-party practice, such as undue complication or delay, rather than applying a categorical rule.[4]

---------------

[4] *See, e.g.*, *Laborers' Pension Fund v. McKinney Const. Corp.*, 2000 WL 1727779, at *2–4 (N.D. Ill. Nov. 21, 2000) (noting allegations in a third-party complaint could not be raised as affirmative defenses in Section 515 action and dismissing third-party complaint because "impleading the Union would unnecessarily complicate and delay resolution of the matter by raising issues of coercion, lack of majority status, and discharge of duties under the contract"); *Laborers' Dist. Council Pension & Disability Trust Fund No. 2 v. Geofreeze, Inc.*, 298 F.R.D. 300, 304 (D. Md. 2014) ("[T]he special nature of this kind of ERISA case should be taken into account when considering the appropriateness of a third-party complaint.  When so considered, the third-party complaint is clearly detrimental to the just, speedy, and inexpensive determination of the Plaintiffs' complaint."(quotation omitted)).  Some courts, even within the same jurisdictions, more clearly reject limiting third-party practice based the Section 515 affirmative defenses.  *See, e.g.*, *See Cent. States, S.E. & S.W. Areas Pension Fund v. Gopher News Co.*, 542 F. Supp. 2d 823, 826 (N.D. Ill. 2008) (stating that "whether Gopher News would be entitled to raise a fraud-in-the-inducement defense against the Plan does not necessarily mean a complaint against the Union must necessarily be litigated separately"); *Trustees of the Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. W.G. Heating & Cooling*, 555 F. Supp. 2d 838, 850 (E.D. Mich. 2008) ("The

Accordingly, the Court finds that applying a flexible approach to impleader is better suited to the goals of third-party practice than a categorical rule strictly limiting third-party complaints in Section 515 actions to allegations that an agreement is illegal or void. The Court notes, however, that in the Section 515 context, a third-party complaint alleging illegality or fraud in the execution would likely more easily satisfy these discretionary guidelines, since the facts would be relevant to both the third-party claim and underlying action.  *Cf. Rozay's Transfer*, 791 F.2d at 774–75.

### C.    Discretionary Factors

Because the Court will apply a flexible approach, the Court will assess Defendant's Third-Party Complaint using generally applicable discretionary factors for impleader, such as the timeliness of joinder, potential prejudice to the parties, potential for undue complication of the underlying action, avoiding duplicative lawsuits, and preventing circuity of action by settling related matters in one lawsuit.  *See, e.g.*, *Waylander-Peterson Co.*, 201 F.2d at 415.

Here, the Third-Party Complaint alleges the CBA is void *ab initio* via fraud in the execution, which is also one of Defendants' affirmative defenses to the Section 515

_____

defendant's third-party complaint asserting fraud and misrepresentation against Local 80 therefore is cognizable and within this Court's supplemental jurisdiction.  Although fraudulent inducement may not normally be a defense to ERISA collection actions of this sort, that rule does not preclude a third-party complaint seeking indemnification on such a theory." (citation omitted)).

action.  "Fraud in the execution arises when an agreement is executed but a party neither has knowledge nor reasonable opportunity to obtain knowledge of its character and essential terms."  *See Trustees of Twin City Bricklayers v. McArthur Tile Corp.*, 351 F. Supp. 2d 921, 924–25 (D. Minn. 2005) (citing *T.E.A.M. Scaffolding Sys., Inc. v. United Bhd. of Carpenters*, 29 Fed. Appx. 414, 416 (8th Cir.2002)).  Misrepresentations as to the character or essential terms of a proposed contract can prevent a party from obtaining knowledge of its terms.  *Raines v. Dow Acoustics, Inc.*, No. 16-2624, 2018 WL 809594, at *3 (D. Minn. Feb. 9, 2018).  In short, fraud in the execution is related to misrepresentations about the actual contents of an agreement.

Defendants allege that Andrist tried to prevent Mindy from reading the agreement; Mindy had never seen the agreement before; and Andrist represented that the terms of the agreement would reflect negotiations with Steve, including limited obligations to pay Union wages and benefits and an ability to terminate the agreement at any time.  Defendants allege that Mindy signed the agreement without an opportunity to review its contents because of Andrist's representations and pressure.  Thus, Mindy did not know the essential terms of the agreement and did not have an opportunity to learn them.  Therefore, the Third-Party Complaint states a claim for fraud in the execution and properly impleads the Union because the allegations overlap with Defendants' affirmative defenses to the Section 515 action and would not unduly complicate the action.

Even if the Third-Party Complaint did not allege fraud in the execution, impleader is still permissible in this case based on the discretionary factors.  First, Defendants filed the Third-Party Complaint at the earliest possible moment in this lawsuit, simultaneous to filing their Answer.  Second, irrespective of whether the Third-Party Complaint alleges fraud in the execution or fraud in the inducement, the facts alleged overlap with Defendants' Affirmative Defenses.  As such, the requisite discovery based on Defendants' Third-Party Complaint would be the same as discovery related to Defendants' Answer and Affirmative Defenses, and the risk of undue complication to the Section 515 action is relatively low.  *Cf. Geofreeze*, 298 F.R.D. at 303–04 (dismissing the third-party complaint to avoid discovery proceeding on two different tracks).  Third, if the Court strikes the Third-Party Complaint, Defendants could file a separate complaint against the Union alleging the same claims and facts, which would require duplicative discovery, and could result in a circuitous outcome.  *Cf. Rozay's Transfer*, 791 F2d at 777 n.4 (explaining that, after the district court struck a third-party compliant in a Section 515 action, the employer filed a separate lawsuit against the Union and the district court awarded indemnification for any contributions found to be owed in the Section 515 action).

The Court is cognizant that Section 515 actions are intended to be streamlined and relatively swift.  If discovery reveals that the overlapping factual allegations in the Third-Party Complaint and Affirmative Defenses are not actually relevant to both parts of the action, or if discovery does not support the allegation of fraud in the execution, then both

the Third-Party Complaint and the collection action could be ripe for summary judgment.

However, based on the allegations, it appears that there is a significant amount of factual

overlap, and pursuing discovery through a single action will be more efficient for the Court

and the parties.  In sum, because the Third-Party Complaint would not unduly complicate

or prolong the matter, even considering concerns specific to the Section 515 context, the

Court will deny the Funds' Motion to Strike the Third-Party Complaint.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendants' Motion to Strike Third-Party Complaint [Docket No.

21] is **DENIED**.


DATED: February 12, 2021          _____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                        Chief Judge
                                           United States District Court